The STATE ex rel. DISTRICT 1199, HEALTH CARE AND
SOCIAL SERVICE UNION, SEIU, AFL–CIO et al.,

v.

GULYASSY, Deputy Dir., et al.

[Cite as *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL–CIO v. Gulyassy* (1995), 107 Ohio App.3d 729.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APD01–26.

Decided December 12, 1995.

730

Cloppert, Portman, Sauter, Latanick & Foley, Michael J. Hunter and Debra D. Paxson, for relators.

Betty D. Montgomery, Attorney General, and Jack W. Decker, Assistant Attorney General, for respondents.

PEGGY BRYANT, Judge.

Relators, District 1199, Health Care and Social Service Union, SEIU, AFL–CIO, as well as its president, Tom Woodruff, and its secretary-treasurer, David Mott, brought this original action in mandamus seeking access to and inspection of records maintained by respondents Stephen Gulyassy, Deputy Director of the Ohio Office of Collective Bargaining ("OCB"), and James Conrad, Director of the Ohio Department of Administrative Services.

Pursuant to R.C. 149.43, relators, on December 13, 1994, sought disclosure of "all drafts of proposed changes to R.C. Chapter 4117 which have either been prepared by the Office of Collective Bargaining, or have been transmitted to the Office of Collective Bargaining by other State Departments, by other entities, or by other individuals." While relators requested those documents during the course of collective bargaining negotiations, they do not relate to issues scheduled to be negotiated.

The requested documents are drafts of OCB proposals advocating amendments to Chapter 4117 of the Revised Code. OCB employees either prepared the documents or received them from other state departments or from third-parties. Although some of the documents are written in the form of legislative bills, none have been presented to members of the General Assembly or introduced as legislation.[1] Rather, OCB circulated the drafts within the office and to other state departments, including to people who were not acting as agents, employees

---

1. Part of OCB's drafts concerned proposed changes to R.C. 4117.08 and was introduced as language in the 1996–1997 budget bill. The resulting budget, however, did not utilize that language and did not amend or repeal any part of R.C. 4117.08. The parties agree that those drafts are not sought in this action, except to the extent that they contained proposed revisions to R.C. Chapter 4117 in general.

or representatives of OCB. None of the drafts necessarily represents OCB's final position regarding legislative proposals.

On January 5, 1995, respondent Gulyassy denied access to the requested documents, contending that they contained material in draft form which could not constitute R.C. 149.43 "public records."

On January 6, 1995, relators in response filed a complaint in mandamus, requesting an order which requires respondents to prepare the requested records at actual cost and to cease all interference and retaliation against relator for its exercise of rights under the Ohio Public Records Act.[2] Pursuant to R.C. 149.43(C), relators also seek reasonable attorney fees.

A writ of mandamus is warranted when (1) the relator has a clear legal right to the relief prayed for; (2) the respondent is under a clear legal duty to perform the requested act; and (3) the relator has no plain and adequate remedy at law. Relators meet those three points when a keeper of public records fails to comply with R.C. 149.43(B) requirements for public access to public records. See *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377; *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83.

R.C. 149.43(B) instructs persons responsible for public records to promptly prepare and make them available to the public, stating:

"All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in a manner that they can be made available for inspection in accordance with this division."

The duty to make records available applies only to documents satisfying the Revised Code definitions of "record" and "public record." Those definitions are to be construed broadly; any doubts are to be resolved in favor of disclosure. *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232 ("because the law is intended to benefit the public through access to records, this court has resolved doubts in favor of disclosure"). R.C. 149.011(G) defines "records" as including:

---

**2.** To the extent that relators' request for an order preventing OCB from interfering with relators' access to documents requests us to issue an injunction, we refuse. The courts of appeals do not have original jurisdiction in injunction. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, at paragraph four of the syllabus.

"[A]ny document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

If a document is a record, it becomes a "public record" under R.C. 149.43(A)(1) if it is:

"[K]ept by any public office, including, but not limited to, state * * * units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, records containing information that is confidential under section 4112.05 of the Revised Code, and records the release of which is prohibited by state or federal law."

The parties stipulate that the requested documents do not fall within the exceptions for "medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under R.C. 2151.85, and to appeals of actions arising under that section, records listed in R.C. 3107.42(A), trial preparation records, confidential law enforcement investigatory records, or records containing information that is confidential under R.C. 4112.05." Thus, if the documents satisfy the Revised Code definitions of "record" and the general definition of "public record," they must be made available unless they are excepted from disclosure under some provision of state or federal law.

■ Under the R.C. 149.011(G) definition for "records," OCB "created or received" the drafts, which in this instance "serve to document" the office's "policies, operations, and activities" in the legislative arena. Because the definition of "records" " 'encompass[es] anything a governmental unit utilizes to carry out its duties and responsibilities,' " *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 39, 550 N.E.2d 464, 466, quoting *State ex rel. Jacobs v. Prudoff* (1986), 30 Ohio App.3d 89, 92, 30 OBR 187, 190, 506 N.E.2d 927, 930, the drafts fall within the R.C. 149.011(G) definition of "records."

■ Respondents nonetheless claim that because the documents are in draft form, they cannot "document" OCB's policies, and thus do not fall within the R.C. 149.011(G) definition of "record." Even if a document is not in its final form, it still may constitute a "record" documenting the policies, decisions, or activities of the public office. See *Schweikert, supra*, 38 Ohio St.3d at 172–173, 527 N.E.2d at 1231–1233 (suggesting that under the current version of R.C. 149.43 "preliminary work product" that has "not reached its final stage" still may be a "public record"). Nor are the drafts excluded from the definition of "record" simply

because they relate to the legislative arena. See *Beacon Journal Pub. Co. v. Stow* (Aug. 7, 1985), Summit App. No. 12058, unreported, 1985 WL 11032.

Relators having met the definition of "records," they must next demonstrate that the documents requested are public records. Under the definition of "public records," we first must determine whether the drafts are "kept by any public office" and if so, whether their release "is prohibited by state or federal law." R.C. 149.43(A)(1).

In urging that the drafts are not "public records," respondents rely upon several cases holding that the term "public records" does not include public officials' personal memoranda created for their own benefit. See *State ex rel. Steffen v. Kraft* (1993), 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689; *Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Voinovich* (1995), 100 Ohio App.3d 372, 654 N.E.2d 139; *Vindicator Printing Co. v. Julian* (July 26, 1994), Mahoning App. No. 93CA252, unreported, 1994 WL 397283. Respondents' reliance on those cases, however, is misplaced, as nothing in this record suggests that the drafts are personal documents created solely for a public official's own convenience, or that other public officials did not access or use them. See *Steffen, supra*, 67 Ohio St.3d at 440, 619 N.E.2d at 689.

For example, the Supreme Court in *Steffen* held that a trial judge's personal handwritten notes made during trial are not public records, as they were personal papers kept for the judge's own convenience, no other court officials had access to these notes, and the clerk of court did not have custody of them. *Id.* The court therefore concluded the trial judge's notes were not "public records" because they were not kept by any *public office. Id.* Further, the public was not deprived of any benefit by the result, as the public could access the trial transcript. *Id.* See, also, *Voinovich, supra* (Governor's personal calendar not subject to disclosure).

Similarly, evaluation forms completed by individual board of education members were held not to be public records. *Vindicator Printing, supra.* Rather, the forms were personal to the board members, they were made exclusively to prepare members for the meeting, and individual board members were not required to compile the forms or to turn in their evaluations. *Id.* Because the forms were an aid to individual board members for their personal use, they did not document the decision of the entire board. Further, because the board as a whole compiled a "public record" evaluation, the public also was not harmed by lack of a public record. *Id.*

Whereas the cases upon which respondents rely concern documents that are personal to the writer and written for the writer's convenience, here the drafts were not created for any one public official's personal benefit or convenience. They were circulated beyond the writer and outside OCB, and they were not

maintained in a manner indicating a private purpose. See *Sibille v. Fed. Res. Bank* (S.D.N.Y.1991), 770 F.Supp. 134, 136 (when determining whether personal papers constitute agency records, federal courts focus upon the agency's control over the paper, whether the paper was generated within the agency, whether the paper was placed in an agency file, and whether the paper was used by the agency for any purpose, the author's personal use of the document, whether it was retained solely for the convenience of the individual writer, and whether it was available to other agency employees). The drafts at issue here did "document" policies, operations, and activities of the OCB, and as "records" "kept" at a public office, they are public records unless excepted from disclosure under state or federal law.

In that regard, respondents urge that we adopt a "deliberative privilege" as part of state law prohibiting the release of what are otherwise public records.[3] Respondents' argument arises out of Exemption 5 to the Freedom of Information Act, Section 552, Title 5, U.S.Code, which states that agencies need not provide public access to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Section 552(b)(5), Title 5, U.S.Code ("Exemption 5").

The exemption covers both attorney work product prepared in contemplation of litigation and documents that are predecisional and deliberative. *Senate of Puerto Rico v. United States Dept. of Justice* (C.A.D.C.1987), 823 F.2d 574, 584; *Schell v. United States Dept. of Health & Human Serv.* (C.A.6, 1988), 843 F.2d 933, 939. Documents falling within the exemption are "predecisional" if they are " 'received by the decisionmaker on the subject of the decision prior to the time the decision is made,' " *id.* at 938, quoting *Natl. Labor Relations Bd. v. Sears, Roebuck & Co.* (1975), 421 U.S. 132, 151, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29, 47; they are deliberative if they " 'reflect[ ] the give-and-take of the consultative process.' " *Schell, supra,* 843 F.2d at 940, quoting *Coastal States Gas Corp. v. Dept. of Energy* (C.A.D.C.1980), 617 F.2d 854, 866. Documents covered within the deliberative privilege include "views submitted by one agency to a second agency that has final decisional authority," *Bur. of Natl. Affairs, Inc. v. United States Dept. of Justice* (C.A.D.C.1984), 742 F.2d 1484, 1497; *Wolfe v. Dept. of Health & Human Serv.* (C.A.D.C.1988), 839 F.2d 768; recommendations made by inspectors lacking authority to take final agency action, *Hopkins v. United States Dept. of Hous. & Urban Dev.* (C.A.2, 1991), 929 F.2d 81, 85; and internal working papers "in which opinions are expressed and policies formulated and recom-

---

3. Ohio law does recognize attorney-client privilege as part of state law prohibiting the release of the requested documents, *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084, syllabus, but respondents do not contend that the attorney-client privilege applies to them.

mended," *Izaak Walton League of Am. v. United States Atomic Energy Comm.* (N.D.Ind.1974), 380 F.Supp. 630, 637.

■ Underlying Exemption 5 is the policy that "a government agency cannot always operate effectively if it is required to disclose documents or information which it has received or generated before it completes the process of awarding a contract or issuing an order, decision or regulation." *Schell, supra,* 843 F.2d at 939, quoting H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, reprinted in 1966 U.S.Code Cong. & Adm.News 2418, 2427–2428. The exemption also seeks to prevent the agency decisionmaking from "deteriorating" as a result of public exposure. *Schell, supra,* 843 F.2d at 939, citing *Sears, Roebuck & Co., supra,* 421 U.S. at 151, 95 S.Ct. at 1516–1517, 44 L.Ed.2d at 47–48. Respondents urge that the compelling purposes of Exemption 5 require that we find a similar exemption under Ohio law.

Even if respondents' public policy arguments may have some merit, the legislature expresses Ohio public records law through R.C. 149.43, and that statute permits no exemption for a predecisional or deliberative privilege. The General Assembly has done all of the balancing needed in public records law; public policy arguments should not sway our interpretation. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 172, 637 N.E.2d 911, 913–914 ("in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure").

In balancing the competing public policy considerations, the legislature has excepted some public records from disclosure. However, the exceptions mention attorney "work product" only as it concerns preparation for litigation, and it mentions investigatory work product only as it concerns confidential law enforcement investigatory records. See R.C. 149.43(A)(4) and 149.43(A)(2)(c); see, also, *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 208, 611 N.E.2d 838, 841–842 (work product privilege for investigator's deliberative and subjective analysis within confidential law enforcement investigatory record). Even documents considered work product may have to be disclosed if they fall within the R.C. 149.011(G) definition of "records." *Schweikert, supra,* 38 Ohio St.3d at 172–173, 527 N.E.2d at 1231–1233.

For the foregoing reasons, we decline respondents' invitation to create an Exemption 5–type privilege to R.C. 149.43. The documents which relator requests fall within the statutory definitions of "records" and "public records." Consequently, R.C. 149.43(C) mandates that the custodian of those records make them available to the public.

■ Alternatively, respondents assert that provisions of R.C. Chapter 4117 comprehensively regulate all aspects of the collective bargaining relationship and preempt R.C. 149.43 disclosure requirements. R.C. 4117.10(A) provides in pertinent part that R.C. Chapter 4117 prevails over "any and all other conflicting laws." Respondents, however, cannot point to any section within R.C. Chapter 4117 which conflicts with R.C. 149.43; indeed, within R.C. Chapter 4117, no section governs a collective bargaining unit's access to public records.

R.C. 4117.17 is the only section within R.C. Chapter 4117 concerning public records, and that section merely states that certain SERB records are public records. Moreover, in *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 501, 589 N.E.2d 24, 27, the Supreme Court determined that R.C. 4117.17 does not conflict with R.C. 149.43 (employer, party to collective bargaining agreement could request SERB investigation records). While R.C. 4117.17 provides that certain SERB documents must be open to the public, R.C. 149.43 governs all other SERB documents meeting its definition of "public records." As the Supreme Court explained, if the R.C. Chapter 4117 provision were to be exclusive of the public records statute "one or both of the statutes would reflect that intention." *Id.* at 501, 589 N.E.2d at 27.

■ Further, to the extent respondents contend that R.C. 4117.10(A) applies because R.C. 149.43 conflicts with the general policies of R.C. Chapter 4117 and collective bargaining, we again disagree. R.C. 4117.10(A) does not state that the policies underlying R.C. Chapter 4117 prevail over other laws; it only indicates that R.C. Chapter 4117 prevails over conflicting laws. Because the Supreme Court has found no such conflict with R.C. 149.43, respondents' argument is unpersuasive.

■ Respondents also contend that terms within the pertinent collective bargaining agreement exclusively govern relators' access to public records. Respondents, however, cite no section concerning the bargaining unit's access to what are otherwise public records. While Section 7.06 of the agreement states that the parties intend to share all relevant records and to facilitate resolution of grievances, that provision does not concern access to what are otherwise public records. Article 36, concerning employees' access to their personnel files, also does not mention access to what are otherwise public records.

■ Indeed, the pertinent collective bargaining agreement contains no specification about access to public records. Given that fact, R.C. 4117.10 dictates "[w]here no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state * * * laws * * * pertaining to the wages, hours, and terms and conditions of employment for public employees." Without any specific reference

to public records, the collective bargaining contract cannot displace the Public Records Act. See, *e.g., State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 29, 641 N.E.2d 188, 192 ("a collective bargaining agreement does not prevail over conflicting laws where it * * * does not specifically cover certain matters"). Moreover, collective bargaining agreements concerning the confidentiality of records cannot prevail over R.C. 149.43. *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 18 OBR 437, 438–439, 481 N.E.2d 632, 634. Because a collective bargaining agreement, by itself, cannot alter relationships between the government and the public at large, such an agreement cannot alter a duty to make public records available. *Id.*

Respondents contend that *Wells, supra,* does not apply when public employees attempt to access public records. If we adopted respondents' distinction, whether a person had access to public records would depend upon whether he or she was a public employee. We find no authority for the proposition that the employment of the person requesting the records affects their availability. See, *e.g.,* R.C. 149.43(B) (public records shall be prepared and made available to "any person"); *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 610 N.E.2d 997 (office must make personnel file available, regardless of requestor's purpose). As a result, the collective bargaining agreement in this case does not alter OCB's duty to comply with public records law under R.C. 149.43.

For the foregoing reasons, R.C. 149.43 controls the release of the drafts at issue, and OCB has a legal duty to provide access to those documents.

Pursuant to R.C. 149.43(C), relators also request an award of attorney fees. Under this section, attorney fees may be awarded if the relator demonstrates a sufficient public benefit to warrant them. *Mazzaro, supra,* 49 Ohio St.3d at 41, 550 N.E.2d at 468. A court also may consider "the reasonableness of the respondent's refusal to comply with the relator's public record request and whether the respondent acted in good faith." *Id.; Multimedia, supra,* 72 Ohio St.3d at 145, 647 N.E.2d at 1379. Relators' case presents a case of first impression under Ohio public records laws. Both sides to the dispute have put forth strong arguments in support of their respective positions. Under these circumstances, respondents' refusal was made in good faith. Relators' request for attorney fees is denied. See *Mazzaro, supra,* 49 Ohio St.3d at 41, 550 N.E.2d at 468–469; *State ex rel. Lorain Journal Co. v. Lorain* (1993), 87 Ohio App.3d 112, 115, 621 N.E.2d 894, 896–897.

For the foregoing reasons, we grant relators' writ of mandamus and deny their request for attorney fees.

*Writ of mandamus granted;*
*request for attorney fees denied.*

JOHN C. YOUNG and PETREE, JJ., concur.