The STATE ex rel. BEACON JOURNAL PUBLISHING COMPANY et al.

v.

BODIKER, Pub. Defender.

[Cite as *State ex rel. Beacon Journal Publishing Co. v. Bodiker* (1999), 134 Ohio App.3d 415.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–827.

Decided July 8, 1999.

416

*Roetzel & Andress, Ronald S. Kopp, Amie L. Bruggeman* and *Alisa Labut Wright,* for relators.

*Kerger & Kerger* and *Richard M. Kerger,* for respondent.

PEGGY BRYANT, Judge.

Relators, the Beacon Journal Publishing Company and reporter Jon Craig, commenced this original action in mandamus seeking access to records maintained by the office of respondent David H. Bodiker, Ohio Public Defender.

Relators seek information relating to respondent's representation of Wilford L. Berry, Jr., who was convicted in 1990 of aggravated murder and sentenced to death. Throughout the appellate process, Berry repeatedly indicated that he desired to waive his appellate rights and receive the death penalty. During the direct appeal, Berry's court-appointed private counsel withdrew, and the Ohio Public Defender's Office was assigned to continue Berry's representation. Berry's conviction and sentence were affirmed on appeal. *State v. Berry* (Oct. 21, 1993), Cuyahoga App. No. 60531, unreported, 1993 WL 425370, affirmed (1995), 72 Ohio St.3d 354, 650 N.E.2d 433, reconsideration denied (1995), 73 Ohio St.3d 1428, 652 N.E.2d 801. On motion of the Ohio Public Defender, the Supreme Court of Ohio appointed a psychiatrist to evaluate Berry's competency to waive collateral review of his sentence and remanded the case to the trial court for a competency hearing. After the competency hearing, the trial court found that Berry was competent to waive further legal challenges of his sentence, and the Supreme Court of Ohio affirmed that ruling. *State v. Berry* (1997), 80 Ohio St.3d 371, 686 N.E.2d 1097.

After the Supreme Court of Ohio set an execution date, Berry's mother and sister sought a federal writ of habeas corpus in order to determine Berry's competency to waive further review of his sentence. The Ohio Public Defender appeared in the habeas corpus proceedings. Although the federal district court

granted the writ and ordered a stay of execution, the United States Court of Appeals for the Sixth Circuit vacated the district court's judgment and reinstated the death sentence. *Franklin v. Francis* (S.D.Ohio), 997 F.Supp. 916, vacated (C.A.6, 1998), 144 F.3d 429, rehearing denied (C.A.6, 1998), No. 98–3187, unreported, and certiorari denied (1998), 525 U.S. 985, 119 S.Ct. 451, 142 L.Ed.2d 404.

After the case was remanded to the federal district court, the petitioners, joined by the Public Defender, moved the district court to alter or amend the judgment because of new evidence of serious injuries that Berry sustained during a riot at the Mansfield Correctional Institution on September 5, 1997. The district court denied the motion due to lack of jurisdiction. *Franklin v. Francis* (S.D.Ohio 1998), No. 98–3131, unreported, affirmed (C.A.6, 1999), 168 F.3d 261, application for stay of execution of death sentence and certiorari denied (1999), 525 U.S. 1132, 119 S.Ct. 1022, 142 L.Ed.2d 973. Berry was executed by lethal injection on February 19, 1999.

Pursuant to R.C. 149.43, relators on December 5, 1997, sought disclosure of "all financial records, budgetary records or other material that itemizes, details or otherwise records staff time and public money spent on the [Wilford L. Berry, Jr.] case." Respondent denied the request on two occasions. As a result, on June 29, 1998, relators filed the present complaint in mandamus, requesting a writ ordering respondent to furnish relators reasonable continuing access and the right to inspect and copy the requested financial and time records. Respondent responded with an answer, asserting that the Ohio Public Defender's Office is not a public office within the contemplation of the Public Records Law, that the financial information relators seek does not constitute records under that law, that the information is excepted from disclosure because it is attorney work product and privileged attorney-client communication, that the information is excluded from the definition of public records by the trial-preparation-records exception and various constitutional provisions, and that public policy prevents disclosure of the financial information relators seek.

 Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426–427, 639 N.E.2d 83, 88–89. A writ of mandamus is warranted when (1) the relator has a clear legal right to the relief prayed for, (2) the respondent is under a clear legal duty to perform the requested act, and (3) the relator has no plain and adequate remedy at law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225. A relator meets those three requirements when a public office fails to comply with R.C. 149.43(B) requirements for public access to public records. *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL–CIO v. Gulyassy* (1995), 107 Ohio App.3d 729, 733, 669 N.E.2d 487, 489–490, citing *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142,

647 N.E.2d 1374, 1377, and *Steckman, supra.* "R.C. 149.43 must be liberally construed in favor of broad access, with any doubt resolved in favor of disclosure of public records." *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 51–52, 689 N.E.2d 25, 27–28.

## A. Materials at Issue

■ Relators' public records request does not specify with particularity the materials they seek. Rather, relators requested any records that show the time or money spent in the *Berry* defense. The request is broad, and arguably so vague as to constitute an improper, general request. See, *e.g., State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 246, 643 N.E.2d 126, 127–128 (denial of writ that "broadly sought respondents to search for records containing selected information"); *State ex rel. Zauderer v. Joseph* (1989), 62 Ohio App.3d 752, 756, 577 N.E.2d 444, 446. Nonetheless, by depositions taken in this matter, relators have been able to specifically identify three categories of materials that respondent maintains: (1) contracts reflecting expenditures for outside experts, (2) a computer database reflecting hours logged by individual attorneys, and (3) time sheets completed by those attorneys. To that extent, the request is not overly broad and may be considered. See *Wadd, supra,* 81 Ohio St.3d at 54, 689 N.E.2d at 29; *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 624, 640 N.E.2d 174, 178–179.

Relators allege that respondent also keeps itemized, case-specific expense reports in order to facilitate budget requests and to comply with its general duty under R.C. 120.04(B)(4) to "maintain financial records of all cases handled." The record, however, reflects that respondent does not maintain such itemized reports. Specifically, respondent's affidavit and deposition testimony indicate that respondent's office has never generated itemized, case-specific information for budgetary purposes and that the Ohio Public Defender Commission has never requested case-specific information from respondent under R.C. 120.04(B)(4). Relators have not refuted those assertions.

■ Respondent is not required to generate new documents in response to relators' public records request. *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 382–383, 700 N.E.2d 12, 15–16; *State ex rel. Kerner v. State Teachers Retirement Bd.* (1998), 82 Ohio St.3d 273, 695 N.E.2d 256. "[A] compilation of information must already exist in public records before access to it will be ordered." *Id.* at 274, 695 N.E.2d at 258; see, also, *State ex rel. Sun Newspapers v. Westlake Bd. of Edn.* (1991), 76 Ohio App.3d 170, 173, 601 N.E.2d 173, 175–176. Accordingly, the present action is defined to request the above-noted contracts, database, and time sheets.

### B. "Records" under R.C. 149.011(G)

In order for documents or materials to be subject to disclosure under the Public Records Act, they must fall within the statutory definition of a "public record." *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 529, 692 N.E.2d 596, 599–600. A "public record" is "any record that is kept by any public office," provided that none of the exceptions enumerated in the statute apply. R.C. 149.43(A). According to the definition set forth in R.C. 149.011(G), "records" includes "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

■ The time sheets and contracts at issue fall squarely within the definition of "records," as those documents serve to document the operations and activities of the Public Defender's Office. Respondent imposed the time sheet system to increase attorney efficiency, and the contracts with outside experts and legal counsel evidence official agreements with private entities. See *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 40, 550 N.E.2d 464, 467–468 (indicating that the statutory definition of "record" includes "any material on which a public office could or did rely"). The definition of "records" is also broad enough to extend to respondent's computer database. *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 461, 584 N.E.2d 665, 669–670.

■ Respondent nonetheless contends that even if the materials relators seek are records under R.C. 149.011(G), the Ohio Public Defender's Office is not a public office within the contemplation of the Public Records Act. R.C. 149.011(A) states that for the purposes of the Public Records Act " 'public office' includes any state agency, public institution, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." " '[D]oubts as to the "public" status of any entity should be resolved in favor of finding it subject to the disclosure statute.' " *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 156, 684 N.E.2d 1239, 1240–1241, quoting *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 261, 602 N.E.2d 1159, 1161.

The Ohio Public Defender is established by R.C. 120.04 for the purpose of furthering various government objectives relating to the representation of indigent persons. In that regard, the Ohio Public Defender's Office is a "public office" as defined in R.C. 149.11(A). Moreover, respondent does not dispute that the Ohio Public Defender's Office is supported by public tax revenues, a telling factor in the classification of a public office. See, *e.g., State ex rel. Fostoria Daily*

*Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313 (finding that a publicly funded hospital rendering a public service was a public office); *Toledo Blade, supra*, paragraph one of the syllabus.

Respondent, however, contends that the Ohio Public Defender Commission, a separate entity created under R.C. 120.01, is more accurately labeled a "public office" because the commission sets policy, monitors the activities of the Public Defender's Office, and submits budget proposals to the legislature. Whether the Ohio Public Defender Commission is a public office does not resolve respondent's status as a public office. Moreover, the General Assembly has apparently rejected such policy-based preferences among public records custodians, in that R.C. 149.011(A) classifies as a public office "any" entity that otherwise satisfies the statutory definition.

Based upon principles set forth in *Polk Cty. v. Dodson* (1981), 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509, respondent also urges that the Public Defender is not a "state actor" under the Public Records Act. In *Dodson*, a civil action under Section 1983, Title 42, U.S.Code, the court first concluded that a person acts under color of state law for the purposes of Section 1983 liability "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Id.* at 317–318, 102 S.Ct. at 449, 70 L.Ed.2d at 516, quoting *United States v. Classic* (1941), 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383–1384. Reasoning that the public defender's assignment to represent a criminal defendant "entailed functions and obligations in no way dependent on state authority," such as the duty to "advance * * * the undivided interests of his client," the court found that the "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 318–319, 325, 102 S.Ct. at 449–450, 453, 70 L.Ed.2d at 516–517, 521.

*Dodson* is not dispositive here. Relators' mandamus proceeding involves a public records request controlled by the definition of "public office" in R.C. 129.011(G), not the concept of "color of state law" for the purposes of a civil action under Section 1983. As a result, the issues addressed in *Dodson* differ from the issues here. *Dodson* focused on the actual representation of the accused, which the court held to be "essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Dodson, supra*, 454 U.S. at 319, 102 S.Ct. at 450, 70 L.Ed.2d at 517. Respondent's record-keeping activities, however, including recording attorney time sheets for efficiency purposes, entering those time records into a computer database, and memorializing contractual agreements with private parties, relate only tangentially, if at all, to the Public Defender's exercise of professional judgment on behalf of the indigent client in the actual criminal proceeding. Cf. *Id.* at 325–326, 102 S.Ct. at 453–454,

70 L.Ed.2d at 520–522 (clarifying that the Public Defender may act under color of state law in his or her role as an administrator or an investigator, rather than an advocate); *Imbler v. Pachtman* (1976), 424 U.S. 409, 430–431, 96 S.Ct. 984, 994–996, 47 L.Ed.2d 128, 143–144 (advancing a similar suggestion with regard to prosecutors).

Accordingly, respondents' time sheets, database, and contracts at issue are records under R.C. 129.011(G).

### C. "Public Records" under R.C. 129.43

■ Because we conclude that the Ohio Public Defender's Office is a public office, and that the materials sought by relators are records, the materials are public records subject to disclosure if they do not fall within one or more of the exceptions delineated by the Public Records Act. R.C. 149.43(A). "Exceptions to disclosure are strictly construed against the custodian of the public records, and the burden to establish an exception is on the custodian." *Thomas, supra,* 71 Ohio St.3d at 247, 643 N.E.2d at 128.

1. Evidentiary and Ethical Considerations.

■ Respondent contends that the records at issue are properly withheld based on the attorney-client privilege. Pursuant to R.C. 149.43(A)(1)(p), the attorney-client privilege, where applicable, prohibits the release of otherwise public records. *Nix, supra,* 83 Ohio St.3d at 383, 700 N.E.2d at 16; *Gulyassy, supra,* 107 Ohio App.3d at 736, fn. 3, 669 N.E.2d at 491. The privilege "is based on the premise that confidences shared in the attorney-client relationship are to remain confidential." *Thomas, supra,* 71 Ohio St.3d at 249, 643 N.E.2d at 130. For that reason, the attorney-client privilege applies to communications between attorneys and their clients pertaining to the attorneys' legal advice. *Id.* "[F]acts within [the attorney's] own knowledge, rather than confidential communications," are not within the attorney-client privilege. *In re Martin* (1943), 141 Ohio St. 87, 105, 25 O.O. 225, 233, 47 N.E.2d 388, 396. Extraneous facts, such as the "fee, the contract therefor, and the amount thereof," are not subject to the attorney-client privilege. *Id.* at 104, 25 O.O. at 233, 47 N.E.2d at 396. The attorney-client privilege thus does not except from the definition of public records otherwise disclosable documents solely because they reflect the fee charged or time spent by a government attorney. See, *e.g., Sun Newspapers, supra,* 76 Ohio App.3d at 173, 601 N.E.2d at 175–176 (granting writ for release of public records reflecting the amount of attorney fees).

■ Although Wilford Berry is now deceased, the attorney-client privilege does not expire with the death of the client. *Taylor v. Sheldon* (1961), 172 Ohio St. 118, 15 O.O.2d 206, 173 N.E.2d 892, paragraph two of the syllabus. To the

extent that the records at issue reflect more than time spent and fees charged and include confidential communications between Berry and his attorneys, the materials may be reviewed *in camera* by this court to determine which sections must be excised pursuant to the attorney-client privilege. Respondent is obligated to note specifically those documents that may contain privileged information. However, the remaining information in those records not covered by an exception must be released. *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 31, 661 N.E.2d 180, 186–187.

Respondent also asserts that his ethical duty to preserve client confidences and secrets under DR 4–101 of the Ohio Code of Professional Responsibility prohibits him from releasing the information relators seek. DR 4–101(B) prohibits an attorney from knowingly revealing confidences or secrets of his or her client, except in certain circumstances. DR 4–101(A) defines "confidence" as "information protected by the attorney-client privilege under applicable law." To the extent, as noted, that the financial and time records reflect no confidential communication between attorney and client and are not protected by the attorney-client privilege, the records at issue do not contain confidences under DR 4–101.

The rule further defines "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Notably, the authorities that hold that the attorney-client privilege prohibits the release of confidences under R.C. 149.43(A)(1)(p) do not indicate whether secrets similarly are exempt from disclosure. See, *e.g.*, *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision* (1998), 81 Ohio St.3d 58, 62–63, 689 N.E.2d 32, 36; *Gulyassy, supra*, 107 Ohio App.3d 729, 669 N.E.2d 487; and *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084. As those authorities hold, common-law privileges, rather than ethical duties, are the provisions of state law that prohibit the release of records under R.C. 149.43(A)(1)(p). See, *e.g.*, *TBC Westlake, supra*, 81 Ohio St.3d at 62–63, 689 N.E.2d at 35–36; compare DR 4–101(C)(2) (permitting a lawyer to reveal confidences and secrets when required by law). Even if, however, DR 4–101 prohibits the release of otherwise public records, respondent has not demonstrated that Berry requested the financial and time information at issue to be held inviolate or that disclosure of that factual information would result in embarrassment or detriment to Berry. The requested information does not constitute client secrets under DR 4–101.

Respondent also asserts that his ethical obligation under DR 1–102(A)(5) to refrain from engaging in conduct that is prejudicial to the administration of justice prohibits the release of the financial and time records at issue. Similarly, respondent asserts that the release of the records will violate his ethical duty

under DR 7–107(A) to refrain from making extrajudicial statements that will have a substantial likelihood of materially prejudicing an adjudicative proceeding in a matter in which he has participated. Relators do not articulate, nor do we discern, how the release of the requested information at this time, after all judicial proceedings involving Berry have concluded, will prejudice the administration of justice or the adjudicative proceedings in this case. Accordingly, DR 1–102(A)(5) and 7–107(A) do not pertain to this proceeding.

2. Investigatory Work Product and Trial Preparation Records.

■ Respondent next contends that the records relators seek constitute attorney work product and are therefore excepted from the definition of "public records" under *Steckman*. In so arguing, respondent relies heavily on the portion of *Steckman* construing the exception for "confidential law enforcement investigatory records" under R.C. 149.43(A)(2)(c). While that exception is sometimes referred to as the work product exception, see, *e.g.*, *Steckman, supra*, 70 Ohio St.3d at 435, 639 N.E.2d at 94–95, the exception applies only to materials compiled by law enforcement officials and relating directly to law enforcement. See *id.* at 434, 639 N.E.2d at 93–94; *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 581, 697 N.E.2d 210, 213–214. The materials at issue satisfy neither of those prerequisites.

Again relying on *Steckman*, respondent also asserts that the records relators seek are trial preparation records under R.C. 149.43(A)(1)(g). R.C. 149.43(A)(4) defines "trial preparation record" as "any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." The exception contemplates records containing materials such as attorney notes of proceedings, status reports, and legal research conducted by a law department. *Nix, supra*, 83 Ohio St.3d at 384, 700 N.E.2d at 16–17.

Under that definition, *Steckman* held that "[i]nformation, not subject to discovery pursuant to Crim.R. 16(B), contained in the file of a prosecutor who is prosecuting a criminal matter, is not subject to release as a public record pursuant to R.C. 149.43 and is specifically exempt from release as a trial preparation record in accordance with R.C. 149.43(A)(4)." *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph three of the syllabus. The court observed that, given the broad language in the statutory definition of trial preparation record, "[i]t is difficult to conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of a specific criminal proceeding or the personal trial preparation of the prosecutor." *Id.* at 431–432, 639 N.E.2d at 92. Respondent contends that *Steckman* applies with equal force to records maintained by the Public Defender.

■ The factual information relators seek does not bear directly on the Public Defender's exercise of professional judgment on behalf of the indigent client. Time sheets and billing records generally can be categorized as "routine office records" that fall outside the definition of "trial preparation records." *State ex rel. Carpenter v. Tubbs Jones* (1995), 72 Ohio St.3d 579, 580, 651 N.E.2d 993, 993–994. Routine office records, incident reports, and information discoverable under Crim.R. 16(B) do not become trial preparation records simply because they are contained within the attorney's file. *Id.*

■ Moreover, whether or not the factual information at issue is properly labeled "routine office records," the exception for trial preparation records in all likelihood does not apply at this time. Even if the information is properly categorized as trial preparation records, trial preparation records generally lose their exempt status after all proceedings in a particular case are completed. See *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1999), 84 Ohio St.3d 310, 311, 703 N.E.2d 796, 796–797; *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 360, 673 N.E.2d 1365, 1368–1369 (both citing *Steckman, supra,* 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph four of the syllabus).

The purpose of the trial preparation exemption ordinarily is not furthered by continuing the exempt status of the record after all proceedings have ended. *Cleveland Police Patrolmen's Assn., supra,* 84 Ohio St.3d at 311, 703 N.E.2d at 796–797. In some limited situations however, we recognize that trial preparation materials reflecting the independent thought processes of the attorneys within the Public Defender's Office, such as those involving a consultant's strategy for *voir dire* in capital murder cases, may be directed to more than a single case. In those rare situations, unlike the situations embraced by the general rule announced in *Steckman,* the purpose of the trial preparation exception is furthered by continued exemption from disclosure. Cf. *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 354–355, 673 N.E.2d 1360, 1363–1364 (discussing the private nature of discovery proceedings). Respondent nonetheless bears the burden of demonstrating that release of the records would reveal specific trial techniques honed by the independent thought processes and personal preparation of Public Defender's Office attorneys and prepared for proceedings other than those at issue, thereby jeopardizing future clients. Here, respondent has not satisfied that burden by merely averring generally that the release of the materials at issue *might* or *could* reveal attorney work product and trial strategies. Indeed, we would expect few of the requested documents to contain trial preparation documentation, and even fewer to contain such documentation directed to more than the *Berry* proceedings.

■ In the final analysis, to the extent that R.C. 149.43(A)(1)(g) no longer applies, the materials cannot at this time be excepted from disclosure as trial

preparation records. As is the case with confidential attorney-client communications, however, those records that respondent claims contain trial preparation records directed not only to Berry's case but to other proceedings as well may be viewed *in camera* by this court to determine which sections may be excised pursuant to the exception for trial preparation records. Respondent is obligated to identify specifically those instances, if any, to which the exception may continue to apply.

3. Constitutional Barriers.

Respondent also contends that release of the records would infringe the Public Defender's indigent clients' state and federal constitutional rights to equal protection, substantive due process, privacy, and procedural due process, thereby excepting the documents from disclosure under R.C. 149.43(A)(1)(p).

 Under his equal protection and substantive due process contentions, respondent maintains that compelled disclosure of the money and time expended in the representation of an indigent capital defendant, absent a similar requirement for retained private attorneys, impermissibly discriminates against indigent defendants. Respondent thus contends that the Equal Protection and Due Process Clauses of the Ohio and United States Constitutions bar release of those records under R.C. 149.43(A)(1)(p).

The standard for determining whether a statute violates equal protection is essentially the same under the state and federal Constitutions. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 561, 664 N.E.2d 926, 929. " 'Under a traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved.' " *Id.*, quoting *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911.

Within those parameters, respondent contends that the classification created by requiring an indigent capital defendant's counsel to disclose financial and time information impairs the capital defendant's fundamental right to fairness in the adjudicatory process. The United States Supreme Court has referred to the basic fairness of trial as a fundamental right. See *Cooper v. Oklahoma* (1996), 517 U.S. 348, 366, 116 S.Ct. 1373, 1382–1383, 134 L.Ed.2d 498, 513–514. However, "there is no decision of the Supreme Court with a majority opinion explaining the extent to which fundamental rights analysis justifies strict judicial scrutiny of legislative regulations of criminal trials that are challenged as being violations of substantive due process or equal protection principles." 3 Ronald D. Rotunda &

John E. Nowalk, Treatise on Constitutional Law: Substance and Procedure (3 Ed.1999) 799, Section 18.41, fn.1.

We acknowledge that, at some stages of the criminal process, the right of the capital defendant to fairness may be undermined by disclosure of information relating to representative strategy. See, *e.g.*, *United States v. McVeigh* (W.D.Okla.1996), 918 F.Supp. 1452, 1463–1465. However, the timing of the disclosure is a significant factor in assessing the capital defendant's affected interest. *Id.* at 1465. Here, to the extent that a fundamental right to fair proceedings existed during Berry's criminal adjudication, appeal, and collateral review, the right cannot now be impaired by disclosure of financial and time records, because the proceedings have concluded. Disclosure in this case cannot affect the fairness of the proceeding.

Additionally, compelled release of financial and time records in cases involving only indigent capital defendants does not involve a suspect classification, as a classification based upon wealth alone has never been found to be suspect. *Lyle Constr., Inc. v. Ohio Dept. of Natural Resources, Div. of Reclamation* (1987), 34 Ohio St.3d 22, 27, 516 N.E.2d 209, 213–214, citing *San Antonio Independent School Dist. v. Rodriguez* (1973), 411 U.S. 1, 29, 93 S.Ct. 1278, 1294–1295, 36 L.Ed.2d 16, 40–41; see, also, *Maher v. Roe* (1977), 432 U.S. 464, 470–471, 97 S.Ct. 2376, 2380–2381, 53 L.Ed.2d 484, 492–493.

Because the classification at issue neither impairs a fundamental right at this stage in the proceedings nor involves a suspect classification, it does not violate the federal and Ohio Equal Protection Clauses if it bears a rational relationship to a legitimate government interest. *Adkins v. McFaul* (1996), 76 Ohio St.3d 350, 351, 667 N.E.2d 1171, 1172–1173. Analogously, if the statutory classification is rationally related to a legitimate government purpose, no substantive due process violation exists. *Id.*

The classification resulting from compelled disclosure of public records bears a rational basis to a legitimate government interest. The Public Records Act rests upon the "fundamental policy of promoting open government, not restricting it." *State ex rel. Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 171, 680 N.E.2d 956, 959; see, also, *Wertheim, supra*, 80 Ohio St.3d at 158, 684 N.E.2d at 1242 (noting that "[o]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed"). The classification at issue is rationally related to that legitimate governmental interest because the Public Defender's Office is a public office, directly within the scope of the governmental interest. By contrast, private counsel hired by nonindigent defendants have no similar relationship to the policy of promoting open government. Because the classification is rationally related to the legitimate governmental interest of promoting open government, compelling the Public Defender to disclose financial and time records violates neither equal protection nor substan-

tive due process guarantees. Accordingly, those provisions do not except the materials at issue from the definition of public records under R.C. 149.43(A)(1)(p).

Respondent's contention that the constitutional right of privacy excepts the requested records is also unpersuasive. The Supreme Court of Ohio has indicated that in certain circumstances, the federal constitutional privacy right forbids disclosure of government records. See, *e.g., State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164 (holding that the federal constitutional right of privacy forbids disclosure of Social Security numbers under R.C. 149.43). However, as prerequisites to the constitutional balancing analysis employed in that case, the court has interpreted *Beacon Journal* to require (1) a legislative scheme creating a legitimate expectation of privacy and (2) a high potential for victimization resulting from the disclosure. *Thomas, supra,* 71 Ohio St.3d at 248–249, 643 N.E.2d at 129–130; *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 34–35, 661 N.E.2d 187, 190–191. Neither of those prerequisites is met in the instant case.

Even more recently, the Supreme Court of Ohio held that the federal constitutional right to privacy exempts police internal affairs and personnel records that contain personal information relating to police officers. *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 707 N.E.2d 931. *Keller* applied *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055. *Kallstrom,* in turn, found a privacy right to be fundamental when inmates request personal information relating to arresting officers, because "disclosure creates a substantial risk of serious bodily harm" to the officers. *Id.* at 1064. Due to the potential impairment of the officers' fundamental right to personal security under the substantive due process component of the Fourteenth Amendment to the United States Constitution, *Kallstrom* applied strict scrutiny. In doing so, *Kallstrom* concluded that automatic disclosure of officers' personal information to the public under the Public Records Act was not narrowly tailored to serve the government's interest in maintaining open government, absent notice and a hearing concerning the disclosure. *Id.* at 1065, 1069.

Here, unlike *Kallstrom* or *Keller,* the release of respondent's financial and time records after the conclusion of capital proceedings does not create a substantial risk of bodily harm, apart from that inherent in the proceedings. The quantum of risk involved in releasing the requested materials *during* capital proceedings need not be addressed, as the Berry proceedings are concluded.

Moreover, to the extent that *Keller* also suggests a good-sense rule regarding the release of public records, that rule appears to be inextricably intertwined with the facts of *Keller,* which involved requests by criminal defendants for personal information about law enforcement personnel. Accordingly, we decline to apply a generalized public-policy-based balancing advocated by respondent. *Thomas, supra,* 71 Ohio St.3d at 249, 643 N.E.2d at 130 (noting that "in enumerating very

narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure," quoting *State ex rel. James v. Ohio State Univ.* [1994], 70 Ohio St.3d 168, 172, 637 N.E.2d 911, 913–914).

 Respondent lastly contends that release of the requested records impairs the Fourteenth Amendment right of indigent capital defendants to Procedural Due Process. Procedural Due Process is implicated where a taking or deprivation of a legally protected interest in life, liberty, or property has occurred. See *Bd. of Regents v. Roth* (1972), 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556; *Meachum v. Fano* (1976), 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451. As he did in his constitutional privacy argument, respondent maintains that the legally protected interest at stake is an indigent capital defendant's right to fair proceedings. Because the Berry proceedings have concluded, no such interest exists regarding those proceedings. We decline to render an advisory opinion regarding the interests of other capital defendants in pending proceedings. See, *e.g., Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 177, 25 OBR 243, 243–244, 495 N.E.2d 904, 905–906; *Cascioli v. Cent. Mut. Ins. Co.* (1983), 4 Ohio St.3d 179, 183, 4 OBR 457, 460–461, 448 N.E.2d 126, 129–130; and *State v. Bistricky* (1990), 66 Ohio App.3d 395, 397, 584 N.E.2d 75, 75–76.

Based on the foregoing, respondent's constitutional barriers to classifying the requested materials as public records under R.C. 149.43 are unpersuasive.

### Disposition

Accordingly, relators are granted a writ of mandamus to compel the release of the time sheets, computer database, and contracts demonstrating the time and public funds expended in the representation of Wilford L. Berry. In accordance with our discussion of the attorney-client privilege and trial-preparation records, respondent is directed to submit to this court for *in camera* review and potential redaction only those (1) records, if any, that reflect confidential attorney-client communication or (2) trial-preparation records prepared in anticipation of and directed to both the *Berry* case and other cases. Respondent must specifically identify the portions of those records that respondent asserts are not subject to disclosure. To the extent that relators' request broadly seeks undefined materials, the writ is denied.

*Writ granted in part*
*and denied in part.*

KENNEDY and BROWN, JJ., concur.