**MENTOR EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION, Appellant,**

**v.**

**STATE EMPLOYMENT RELATIONS BOARD, Appellee.**

[Cite as *Mentor Exempted Village School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1991), 76 Ohio App.3d 465.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–14–074.

Decided Dec. 2, 1991.

466

*Ronald J. Habowski,* for appellant.

*Lee Fisher,* Attorney General, and *Vincent T. Lombardo,* Assistant Attorney General, for appellee.

---

JOSEPH E. MAHONEY, Judge.

This is an appeal by the Mentor Exempted Village School District Board of Education ("school board") from a common pleas court judgment affirming a decision by the State Employment Relations Board ("SERB") which found the school board had engaged in an unfair labor practice when it mailed its bargaining unit employees, Ohio Association of Public School Employees ("OAPSE"), a report of negotiations after a declaration of impasse. We affirm.

The pertinent facts as found by the hearing officer are undisputed and are as follows:

"2. The Negotiations Report * * * contained the following introductory language:

" 'To our employees in the classified service:

" 'Many of you have been asking questions about the current status of negotiation. Developments that took place on Wednesday, December 4th, warrant an explanation to you. As you know, Ohio law prohibits an employer from negotiating directly with employees when they have selected representatives to bargain for them. OAPSE is, of course, your representative and we intend to continue our efforts by negotiating *only* with OAPSE. Please understand why we do not answer your questions individually. We have been negotiating since this past summer in an effort to reach agreement on a contract. We have reached tentative agreement on the following issues as

well as additional tentative agreements detailed elsewhere in this memorandum.'

" * * *

"The Negotiations Report goes on to list and describe the status of the twenty (20) issues which remained unresolved. Regarding each of the issues, the Negotiations Report indicates the proposals and counterproposals made by each of the parties and no attempt is made to argue the merits of any of the proposals. The report accurately capsulizes the bargaining positions taken by the parties up to the declaration of impasse on December 5, 1984 * * *.

"3. On or about December 9, 1984, OAPSE called a meeting of its membership. More than 100 of the approximately 350 members of the bargaining unit attended the meeting. During this meeting many of the members expressed hostile and antagonistic displeasure with OAPSE's representation as a result of their review of the Negotiations Report. On December 13, 1984, OAPSE filed an unfair labor practice charge against Respondent alleging that Respondent's issuance of the Negotiations Report constituted a violation of Sections 4117.11(A)(1), (A)(5), and (A)(8)." (Emphasis added.)

The hearing officer recommended that OAPSE's complaint be dismissed, and OAPSE filed an exception to the hearing officer's recommendation.

SERB rejected the hearing officer's recommendation and found the Negotiations Report to be violative of R.C. 4117.11(A)(1), (A)(5), and (A)(8) and, therefore, an unfair labor practice. In doing so, it did not challenge the factual findings of the hearing officer, but embellished them in its opinion as follows:

"In the collective bargaining process and the employer/exclusive representative relationship, the parties must be free to develop and execute their bargaining strategies and techniques that will, in their judgment, best serve to advance and/or protect their respective interests. The development of these strategies and techniques must be free from the other party's influence.

"Affecting a negative reaction at the bargaining session to an offer that privately may be acceptable is a common bargaining technique. By such posturing the party hopes to advance its objectives and perhaps attain some extra benefit in the process. This posturing, however, if reported out of context to its strategic design, and especially to a union membership, has the potential of impairing the exclusive representative's effectiveness and relationship with the employees it represents.

"A union's bargaining strategies and techniques can be effectively blunted if an employer, using its unique position, elects to undercut the union's exclusive representative status by going directly to the union's membership.

" * * * The Employer [School Board], in the instant case, chose to communicate directly with the employees, circumventing the exclusive representative, and, regardless of intent, caused dissension among the union members at a critical time in contract negotiations. In such an instance, it is not necessary to prove that the Employer deliberately tried to undermine the union's exclusive representative status. It is sufficient to know that its actions caused disruption in the union's ranks.

" * * *

"Regardless of the union's strategy or the employer's intent, the employer's actions, in the instant case, clearly damaged the relationship of the exclusive representative with the members it represents and placed it in a defensive bargaining position. Thus, by its actions [the employer] violated O.R.C. Section, 4117.11(A)(1), (A)(5), and (A)(8)."

The trial court affirmed the SERB decision and the school board appeals, assigning the following errors:

"1. The trial court erred in not finding that public employers are entitled to federal constitutional guarantees of free speech.

"2. The trial court abused its discretion in finding there was substantial evidence upon which to affirm SERB's decision.

"3. The trial court erred in not finding that SERB violated Ohio Administrative Code guidelines for review of a hearing officer's recommendation."

■ The Ohio Supreme Court in *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 518 N.E.2d 1190, stated: " * * * A political subdivision, such as a school district, receives no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state." *Id.* at 122, 518 N.E.2d at 1193. The First Amendment protection sought could only come through the Due Process Clauses and, therefore, under the Supreme Court's reasoning in *Avon*, the first assignment of error is rejected.

In the second assignment of error, appellant asserts that the trial court abused its discretion in finding there was substantial evidence upon which to affirm SERB's decision.

■ Our standard of review is very narrow. We must decide whether the trial court abused its discretion when it determined that the SERB decision was supported by substantial evidence. In *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–267, the Ohio Supreme Court stated:

"The common pleas court * * * concluded that ' * * * SERB's findings were supported by substantial evidence. * * * ' In utilizing this standard of

review, the trial judge complied with the dictates of R.C. 4117.13(D). Pursuant to that statute, the standard of review of a SERB decision on an unfair labor practice charge is whether there is substantial evidence to support that decision. * * *

" * * *

"In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. * * *"

The ultimate issue is whether the issuance of the negotiations report directly to the employees, in and of itself, was an unfair labor practice as a matter of law. That is the heart of the SERB decision. It is uncontroverted that the report is accurate and does not contain any threat of reprisal or force, or promise of a benefit. The report acknowledged the school board's obligation to bargain collectively and did not editorialize or attempt to argue the merits of each position.

We find that decisions of the National Labor Relations Board generally approve such contact so long as it is noncoercive and does not promise any benefits. In *United Technologies Corp.* (1985), 274 NLRB 609, 118 LRRM 1445, in approving a direct mail noncoercive contact setting forth wage proposals, the NLRB stated at 610, 118 LRRM at 1447:

"The goal of the Federal labor policy has always been to create a favorable climate in which a healthy and stable bargaining process can be established and maintained. We believe that permitting the fullest freedom of expression by each party to that process offers the best hope of nurturing that environment. Ideas which are tested in the marketplace of free debate provide the foundation of a sound labor relations framework. We recognize that there may be some risk that direct communication between an employer and its employees which bears on the bargaining process may be perceived by some as an attempt to undermine the statutory collective-bargaining representative. However, we are convinced that the benefits to be derived from free, noncoercive expression far outweigh such speculative concerns. * * * "

There is no direct evidence that the school board undertook this action as a strategy to undermine the union, to invite direct bargaining, to elicit a response, or to avoid its statutory or contractual obligations. We believe, however, that R.C. 4117.11(A) does not require that the employer know that its action is in violation of the law, but only that the act was intentional in the sense that it was not a bona fide error and that its result,

regardless of the intent, was to disrupt the relationship between the union and its members. We adopt the reasoning of the SERB opinion. The school board's actions violated R.C. 4117.11(A)(1), (A)(5), and (A)(8).

Accordingly, the second assignment of error is without merit.

 In the third assignment of error, appellant contends that the trial court erred in not finding that SERB violated Ohio Administrative Code guidelines for review of a hearing officer's recommendation. Ohio Adm.Code 4117–7–05 states:

"(B) If upon the preponderance of the evidence taken, the board finds that a respondent has committed an unfair labor practice, the board shall state its findings of fact and issue and cause to be served on the respondent an order requiring the respondent to cease and desist from these unfair labor practices, and take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of Chapter 4117 of the Revised Code. If the board fails to find by a preponderance of the evidence taken that the respondent named in the complaint has committed an unfair labor practice, it shall state its findings of fact and issue an order dismissing the complaint."

Pursuant to R.C. 4117.12(B)(2), the board may "rescind or modify the proposed order of the * * * hearing officer * * *." In *Lordstown Local School Dist. Bd. of Edn. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 252, 20 O.O.3d 240, 421 N.E.2d 511, the Ohio Supreme Court affirmed the right of an administrative agency to overrule its hearing examiner's recommendation provided that it sufficiently states its reasons for disapproval.

In the case *sub judice*, it is clear that SERB sufficiently explained its decision for rejecting its hearing officer's recommendation. It strictly followed the procedures set forth in R.C. 4117.12(B)(2) and Ohio Adm.Code 4117–1–15–(A), which rule states:

"After the recommendation of a board member or a hearing officer is issued to the parties and their representatives and following expiration of the time period for filing exceptions and responses, *the board shall consider the record and issue an appropriate order, a written decision, or directive resolving the issues before the board.* The decision, order or directive of the board shall be served upon the parties or their representative of record." (Emphasis added.)

For the foregoing reasons, appellant's third assignment of error is without merit. Accordingly, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

Ford, P.J., concurs.

Edward J. Mahoney, J., dissents.

Edward J. Mahoney, J., retired, of the Ninth Appellate District, sitting by assignment.

Edward J. Mahoney, J., dissenting.

I respectfully dissent.

I believe that the language of R.C. 4117.11(A) that it is an unfair labor practice to "(1) Interfere with, restrain, or coerce employees * * *; * * * (5) Refuse to bargain collectively * * *; * * * [and] (8) Cause or attempt to cause an employee organization * * * to violate * * * " is suggestive that there must be a showing of something more than mere contact of a noncoercive, nonthreatening, nonpromissory nature which does not seek a response. I believe there must be some evidence that the act was done purposely or there was a probability the result would occur.

It is doubtful that the same Negotiations Report, if made directly to the news media for the consumption of the general public, would be considered an unfair labor practice. Certainly, the employees would get knowledge of it. Does its mailing directly to the employees change its effect? Should unfairness be judged by the result in the "eyes of the beholder"? I think not. However, by the court's decision today, SERB may freely determine "unfairness" by its result upon the union without regard to intent, motive or purpose.