[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 229.]

THE STATE EX REL. CALVARY *v.* CITY OF UPPER ARLINGTON ET AL.

[Cite as *State ex rel. Calvary v. Upper Arlington*, 2000-Ohio-142.]

*Public records—Mandamus sought to compel city of Upper Arlington to provide relator access to a draft collective bargaining agreement being considered by city council—Requested draft agreement provided to relator—Exception to general mootness rule not established by relator— Attorney fees awarded to relator.*

(No. 99-2240—Submitted April 25, 2000—Decided June 28, 2000.)

IN MANDAMUS.

{¶ 1} In 1999, the solid waste, street, and utility employees of respondent city of Upper Arlington, Ohio, exercised their right to organize under Ohio's Public Employees Collective Bargaining Act and elected Teamsters Local 284 as their exclusive representative. Following extensive negotiations between the city and the union on a collective bargaining agreement, the union went on strike on December 1, 1999. On December 3, the city and union reached a tentative verbal agreement, and as part of the agreement, the striking solid waste, street, and utility employees returned to work on December 6.

{¶ 2} On December 10, the city attorney's office prepared a written draft of the tentative verbal agreement that city officials thought it had reached with the union and delivered copies of the written draft to respondent Upper Arlington City Council. On that same date, the union notified the city that unresolved issues remained. At the December 13 city council meeting, Ordinance No. 221-99, which would have authorized and directed respondent Upper Arlington City Manager Richard A. King to enter into the collective bargaining agreement with the union, was on the agenda, as well as a motion to suspend the three-reading city council

rule.[1]  The city council did not vote on Ordinance No. 221-99 at the December 13 meeting, instead giving the ordinance a first reading.

{¶ 3} From December 13 through December 17, 1999, the city refused numerous requests by relator, Eleanor H. Calvary, a resident elector and taxpayer of Upper Arlington, for access to the December 10 draft collective bargaining agreement being considered by the city council.  City Manager King directed that the December 10 document not be released because it appeared that the city and the union were still negotiating the terms of the agreement.

{¶ 4} On December 20, 1999, Calvary filed a complaint for a writ of mandamus to (1) compel respondents, Upper Arlington and its city council, city manager, and clerk of council, to produce the December 10 written draft agreement that was being considered by the city council, and (2) bar the city council from proceeding to consider approval of any ordinance authorizing a collective bargaining agreement between the city and the union.  Calvary also requested expedited consideration and an award of attorney fees and costs.  On December 21, the court granted an alternative writ on Calvary's public records mandamus claim and denied her request for injunctive relief.  87 Ohio St.3d 1473, 721 N.E.2d 119.  On the same date that we granted an alternative writ, the city council held another meeting at which the ordinance was given a second reading.

{¶ 5} On December 29, the union gave its written version of the collective bargaining agreement to Upper Arlington officials, and the city released the two different versions—the city's December 10 draft and the union's December 29

---

1. Section 4, Article IV of the Upper Arlington Rules of Council specifies that "[e]xcept as provided in subsections 5 and 6, *any ordinance or resolution of a general or permanent nature*, or granting a franchise, or creating a right or involving the expenditure of money, or levying of a tax, or the purchase, lease, sale or transfer of property *shall not be passed or adopted, unless it has been fully and distinctly read by title only on three different days*, and with respect to any such ordinance or resolution, *there shall be no authority to suspend this rule, except by an affirmative vote of six members of City Council*, on each ordinance or resolution and entered in the journal."  (Emphasis added.)

draft—to the public and invited public comment before council voted on Ordinance No. 221-99 at a December 29 meeting. The city council rejected Ordinance No. 221-99, *i.e.*, it approved neither draft version of the written collective bargaining agreement.

{¶ **6**} This cause is now before the court for a consideration of the merits. Common Cause of Ohio filed *amicus curiae* briefs in support of Calvary.

_____

*James C. Becker*, for relator.

*Sharon H. Pfancuff*, Upper Arlington City Attorney, for respondents.

*Daniel S. Knisley*, urging granting the writ for *amicus curiae*, Common Cause of Ohio.

_____

*Per Curiam.*

*Mandamus*

{¶ **7**} Calvary requests a writ of mandamus to compel respondents to provide her with access to the December 10 collective bargaining agreement drafted by Upper Arlington and considered by the Upper Arlington City Council at three different meetings. Calvary received access to the records on December 29, the date the city released a copy of its December 10 draft, as well as the union's December 29 draft, to the public before council voted on Ordinance No. 221-99.

{¶ **8**} Under the general rule, the provision of requested records to a relator in a public records mandamus action renders the mandamus claim moot. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25, 27; *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 392, 715 N.E.2d 179, 185; *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 382, 700 N.E.2d 12, 15.

{¶ **9**} Calvary contends that respondents' provision of the requested draft agreement does not moot her mandamus claim because the issues she raises are

capable of repetition, yet evading review. This exception applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Spencer v. Kemna* (1998), 523 U.S. 1, 17-18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43, 56; see, also, *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, 586 N.E.2d 101, 102-103; *State ex rel. Allstate Ins. Co. v. Gaul* (1999), 131 Ohio App.3d 419, 437, 722 N.E.2d 616, 629.

{¶ 10} Calvary has not established that this exception to the general mootness rule applies to her mandamus claim. Calvary has not shown that the time between submission of a tentative collective bargaining agreement to a municipal legislative authority and that authority's decision on the agreement is always so short as to evade review, nor has she demonstrated a reasonable likelihood that she will be unable to obtain subsequent agreements to be voted on by the Upper Arlington City Council. It seems unlikely that a written agreement would be submitted in the future to the city council that is subsequently disputed by the other party to the agreement.

{¶ 11} Moreover, applying the general mootness rule to Calvary's mandamus claim here will not make the issues raised by Calvary evade our review. As in *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 402, 678 N.E.2d 557, 560, we can address the issues raised by Calvary in the context of her request for attorney fees. And despite her claims to the contrary, she presented no evidence to support her assertion that respondents gave the public access to the draft agreement only *five minutes before* the city council's final vote at its December 29, 1999 meeting.

{¶ 12} Therefore, because no exception to the general rule applies, we deny Calvary's mandamus claim based on mootness.

*Request for Attorney Fees*

**{¶ 13}** Calvary requests attorney fees. "A court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot." *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus.

**{¶ 14}** It is uncontroverted that Calvary met the second, third, and fourth requirements specified in *Pennington*. Respondents refused Calvary's requests for access to the December 10 draft agreement; she filed a mandamus action to compel the requested access; and she received a copy of the requested record only after she had filed her mandamus action, and that access mooted her mandamus claim. At issue is the remaining *Pennington* requirement concerning the propriety of Calvary's request.

**{¶ 15}** Respondents contend that because the December 10 draft agreement was not in final form and R.C. 4117.11(A)(1), (5), and (8), and 4117.21 exempted the draft agreement from public disclosure, Calvary's public records request was improper. Respondents' contention is meritless.

**{¶ 16}** Even if a record is not in final form, it may still constitute a "record" for purposes of R.C. 149.43 if it documents the organization, policies, functions, decisions, procedures, operations, or other activities of a public office. *Wadd*, 81 Ohio St.3d at 53, 689 N.E.2d at 28 (access to preliminary, unnumbered accident reports not yet processed by Cleveland into final form); *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232 (access to preliminary work product that had not reached its final stage or official destination); *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU,*

*AFL-CIO v. Gulyassy* (1995), 107 Ohio App.3d 729, 734, 669 N.E.2d 487, 490-491 (access to drafts of proposed changes to collective bargaining statutes prepared by state agency); R.C. 149.011(G). The December 10 draft agreement is a record for purposes of R.C. 149.43 because it documents the activities of respondents Upper Arlington and its officials, *i.e.*, it represents the city's version of what it and the union agreed on during collective bargaining, and the city relied on that version in submitting the draft to the city council for approval. See, *e.g., State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 581, 697 N.E.2d 210, 213; R.C. 149.011(G).

{¶ 17} None of the statutes cited by respondents exempts the draft agreement from disclosure under R.C. 149.43. R.C. 4117.11(A)(1), (5), and (8) merely set forth various public employer unfair labor practices and do not exempt any records from disclosure as public records.

{¶ 18} R.C. 4117.21 provides that "[c]ollective bargaining *meetings* between public employers and employee organizations are private, and are not subject to section 121.22 [open meetings provisions] of the Revised Code." (Emphasis added.) In construing R.C. 4117.21, we first look at the statutory language, reading words used in context and applying rules of grammar and common usage. See *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.* (2000), 87 Ohio St.3d 564, 566, 722 N.E.2d 69, 70-71. A "meeting" is defined as "[a]n assembly of persons, esp[ecially] to discuss and act on matters in which they have a common interest." Garner, Black's Law Dictionary (7 Ed.1999) 997.

{¶ 19} The manifest language of R.C. 4117.21 exempts only collective bargaining *meetings* from public disclosure. R.C. 4117.21 authorizes the closure of collective bargaining meetings between public employers and employee organizations and precludes the disclosure of minutes of those meetings under R.C. 149.43. *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 139, 684 N.E.2d 1222, 1226. But collective bargaining

agreements, tentative or otherwise, resulting from the negotiations are *not* shielded from disclosure. *Id.*; see, also, *In re South Euclid-Lyndhurst City School Dist. Bd. of Edn.* (Apr. 21, 1992), SERB No. 92-005, at 3-15 ("As valuable as [the R.C. 4117.21 provision of] privacy is, however, it applies only to the meetings themselves. This is clear from both the words of the statute and its intent."). None of the cases cited by respondents requires a different result. See, *e.g., Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp., Local 530* (1995), 106 Ohio App.3d 855, 869, 667 N.E.2d 458, 467.

**{¶ 20}** Therefore, Calvary met the remaining *Pennington* requirement as well—she made a proper request for public records to which she was entitled. This conclusion is consistent with our duty in public records cases to strictly construe exemptions from disclosure under R.C. 149.43 and to resolve any doubts in favor of disclosure of public records. *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1999), 84 Ohio St.3d 310, 312, 703 N.E.2d 796, 797.

**{¶ 21}** Further, under our unanimous holding in *Findlay Publishing Co.*, 80 Ohio St.3d at 139, 684 N.E.2d at 1226, we exercise our discretion by awarding Calvary attorney fees because she "has established a sufficient public benefit, and [respondents] failed to comply with [her] records request for reasons that were unreasonable and unjustifiable." *Id.*; *State ex rel. Toledo Blade Co. v. Hancock Cty. Bd. of Commrs.* (1998), 82 Ohio St.3d 34, 37, 693 N.E.2d 787, 788-789. The public benefits when it receives sufficient notice of the terms of a collective bargaining agreement that is being submitted for a vote of a municipal legislative authority in order to provide constructive input to that authority concerning the agreement. And contrary to respondents' claims, they had no reasonable basis for believing that complying with Calvary's requests might result in unfair labor practice charges against them. Cf. *Mentor Exempted Village School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1991), 76 Ohio App.3d 465, 470-471, 602 N.E.2d 374, 378, and *Vandalia-Butler City School Dist. Bd. of Edn. v. State Emp. Relations*

*Bd.* (Aug. 15, 1991), Montgomery App. No. 12517, unreported, 1991 WL 355161, which both involve public employers' direct communications with bargaining unit employees on negotiations with the employees' exclusive representatives and are consequently distinguishable from this case.

{¶ 22} Therefore, we award attorney fees to Calvary and order her counsel to submit a bill and documentation in support of the request for attorney fees, in accordance with the guidelines set forth in DR 2-106(B).

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment.

COOK and LUNDBERG STRATTON, JJ., separately concur in part and dissent in part.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 23} I agree with Justice Lundberg Stratton's conclusion that an award of attorney fees is not warranted in this case.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 24} I agree with the majority that Calvary's mandamus action should be denied because it is moot. However, contrary to the majority's holding, I would deny Calvary her attorney fees.

{¶ 25} An "award of attorney fees under R.C. 149.43 is not mandatory." *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. An award of attorney fees is justified only if there is a sufficient public benefit to having access to the requested document and the respondent failed to comply with the relator's request for reasons that were "unreasonable and unjustifiable." *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 139, 684 N.E.2d 1222,

1226.  In addressing the reasonableness of Calvary's request, the majority concludes that even though the request was for the written draft of the collective bargaining agreement to which "unresolved issues remained," the request was proper and therefore Upper Arlington must pay Calvary's attorney fees.  The majority supports its determination that the request for the draft of the collective bargaining agreement was proper on three bases.

{¶ 26} The first basis is that the *draft* of a public record is still a public record for purposes of disclosure pursuant to R.C. 149.43.  Except for *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL-CIO v. Gulyassy* (1995), 107 Ohio App.3d 729, 734, 669 N.E.2d 487, 490-491, which holds that a draft of a collective bargaining agreement is a public record, I do not necessarily disagree with the cases cited by the majority in support of the proposition that a draft of a public record is subject to public disclosure.  However, for reasons I will set out below, I believe that a *draft of a collective bargaining agreement* is distinguishable from other draft documents retained by a public office.

{¶ 27} The majority's second basis is that a document that memorializes a public office's official duties is a public record for purpose of disclosure under R.C. 149.43.  I do not necessarily disagree with this general premise.  Again, however, I believe that a draft of a collective bargaining agreement is distinguishable.

{¶ 28} The third basis, and primary focus of the majority's analysis, is upon the interpretation of R.C. 4117.21.  The majority holds that R.C. 4117.21 exempts only collective bargaining meetings and the minutes of the meetings from public disclosure.  Citing *Findlay Publishing*, 80 Ohio St.3d at 139, 684 N.E.2d at 1226, the majority goes on to state that  "collective bargaining agreements, *tentative or otherwise*, resulting from the negotiations are *not* shielded from disclosure." (Emphasis added in part.) In fact, *Findlay Publishing* does *not* declare that a tentative collective bargaining agreement is a public record.  Rather, *Findlay Publishing* cites *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub.*

*School Emp., Local 530* (1995), 106 Ohio App.3d 855, 667 N.E.2d 458, and states that "Springfield Local did not hold that the *collective bargaining agreements resulting from the negotiations* are not subject to disclosure." (Emphasis added.) *Id.*, 80 Ohio St.3d at 139, 684 N.E.2d at 1226. In other words, *Findlay Publishing* could be cited for the proposition that a "final" collective bargaining agreement is a public record, a conclusion I do not dispute.

{¶ 29} I believe that it is the General Assembly's intent, reflected in R.C. 4117.21, to distinguish a *draft* of a collective bargaining agreement from other public records because it makes the meetings in which collective bargaining agreements are negotiated private. Paramount in construing statutes is legislative intent. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351, 1353. It is a fundamental rule of statutory construction that statutes pertaining to the same general subject matter should be read *in pari materia*. *Hughes v. Ohio Bur. of Motor Vehicles* (1997), 79 Ohio St.3d 305, 308, 681 N.E.2d 430, 433. In interpreting statutes *in pari materia,* both statutes should be harmonized and given meaning. See, *e.g., Mayfield Hts. Fire Fighters Assn., Local 1500 v. DeJohn* (1993), 87 Ohio App.3d 358, 622 N.E.2d 380.

{¶ 30} Both R.C. 4117.21 and 149.43 address the general subject of public access to the "business" of a public office. R.C. 149.43 provides the general rule that records kept by public offices are subject to public inspection. However, the Public Records Act recognizes that there may be state law exceptions to disclosure of certain public records. See R.C. 149.43(A)(1)(q). R.C. 4117.21 expressly makes collective bargaining meetings between a public employer and the employees' representative private. And as the majority correctly recognizes, R.C. 4117.21 also exempts the minutes of these meetings from public disclosure. See *Springfield Local School Dist. Bd. of Edn., supra*.

{¶ 31} In promulgating R.C. 4117.21, the General Assembly intended that negotiations between a public employer and the employees' representative

regarding a collective bargaining agreement should be private. *Springfield Local School Dist. Bd. of Edn.,* 106 Ohio App.3d at 869, 667 N.E.2d at 467-468. The exemption from public disclosure benefits both the employees, as well as the employer, by enabling candid negotiations. To interpret R.C. 4117.21, as the majority does, making the meetings and minutes from these meetings private but allowing public disclosure of a *draft* agreement of the collective bargaining agreement crafted at the meeting defeats the purpose of R.C. 4117.21. To allow disclosure of a draft of a collective bargaining agreement would permit public access to, in effect, unfinished negotiations. This conflicts with the purpose of R.C. 4117.21, which keeps negotiations of a collective bargaining agreement private. "This court avoids adopting a construction of a statute that would 'result in circumventing the evident purpose of the enactment.' " *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, quoting *Daiquiri Club, Inc. v. Peck* (1953), 159 Ohio St. 52, 55, 50 O.O. 26, 28, 110 N.E.2d 705, 707.

{¶ 32} Therefore, reading R.C. 4117.21 *in pari materia* with R.C. 149.43, I would find that R.C. 4117.21 should exempt not only meetings and minutes from those meetings that address collective bargaining but also any *drafts* of collective bargaining agreements that result from these meetings from public access, as long as the draft does not yet represent the final agreement.

{¶ 33} Because I believe a draft of a collective bargaining agreement should be exempt from disclosure, I would find that Upper Arlington's refusal to provide Calvary with the draft collective bargaining agreement was reasonable. At the very least, Upper Arlington had a good-faith reason for its refusal to release the draft when requested, fearing an unfair labor practice allegation if it prematurely disclosed the collective bargaining agreement. Thus, I believe that Calvary should not be awarded attorney fees.

{¶ 34} Accordingly, I concur that Calvary's complaint seeking a writ of mandamus should be dismissed as moot, but I would deny Calvary attorney fees.

_____