[Cite as *State ex rel. Cincinnati Enquirer v. Ghiz*, 2017-Ohio-8965.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO EX. REL. THE CINCINNATI ENQUIRER, | : | CASE NOS. C-170268 C-170269 |
| | : | |
| STATE OF OHIO EX REL. THE ASSOCIATED PRESS, | : | *O P I N I O N.* |
| | : | |
| STATE OF OHIO EX REL. RAYCOM MEDIA, d.b.a. WXIX-TV, | : | |
| | : | |
| STATE OF OHIO EX REL. OHIO/OKLAHOMA HEARST TELEVISION INC., d.b.a. WLWT-TV, | : | |
| | : | |
| STATE OF OHIO EX REL. SINCLAIR MEDIA III, INC., d.b.a. WKRC-TV, | : | |
| | : | |
| STATE OF OHIO EX REL. CINCINNATI PUBLIC RADIO, d.b.a. WVXU, | : | |
| | : | |
| and | : | |
| | : | |
| STATE OF OHIO EX REL. SCRIPPS MEDIA INC., d.b.a. WCPO-TV, | : | |
| | : | |
| Relators, | : | |
| | : | |
| vs. | : | |
| | : | |
| HON. LESLIE E. GHIZ, JUDGE, HAMILTON COUNTY COURT OF COMMON PLEAS, | : | |
| | : | |
| Respondent. | : | |

Original Action in Prohibition and Mandamus

Judgment of Court: Writ of Prohibition Dismissed; Writ of Mandamus Granted in Part and Denied in Part

Date of Judgment Entry on Appeal: December 13, 2017

*Graydon Head & Ritchey LLP, John C. Greiner* and *Darren W. Ford*, for Relators State of Ohio ex rel. The Cincinnati Enquirer, State of Ohio ex rel. The Associated Press, State of Ohio ex rel. Raycom Media, d.b.a. WXIX-TV, State of Ohio ex rel. Ohio/Oklahoma Hearst Television Inc., d.b.a. WLWT-TV, State of Ohio ex rel. Sinclair Media III Inc., d.b.a. WKRC-TV, State of Ohio ex rel. Cincinnati Public Radio, d.b.a. WVXU,

*Frost Brown Todd, LLC, Monica L. Dias* and *Susan Grogan Faller*, for Relator State of Ohio ex rel. Scripps Media Inc., d.b.a. WCPO-TV,

*Isaac Wiles Burkholder & Teetor, LLC, Mark Landes, Mark R. Weaver* and *Holly E. Oak*, for Respondent.

**MOCK, Presiding Judge.**

{¶1}   On July 19, 2015, University of Cincinnati Police Officer Raymond Tensing initiated a traffic stop of Samuel DuBose.  During the course of the encounter, Tensing discharged his firearm, killing DuBose.  Ten days later, a Hamilton County grand jury issued a two-count indictment, charging Tensing with murder and voluntary manslaughter.  Amid significant local, national, and global media coverage, the case proceeded to trial beginning on October 31, 2016.  The trial proceeded to jury deliberation until, on November 12, the jury announced it was hopelessly deadlocked and the trial judge declared a mistrial.

{¶2}   On December 7, 2016, the case was transferred to Respondent Leslie E. Ghiz ("Respondent"), Judge of the Hamilton County Court of Common Pleas for a second trial.  Prior to the trial commencing, Respondent put on an entry which limited media coverage of the proceedings.  Respondent also refused to release the questionnaires that had been completed by prospective jurors in the case.  As a result of that entry, several media outlets filed complaints in this court seeking a writ of prohibition to prevent Respondent from enforcing the restrictions.  This court granted an alternate writ, preventing Respondent from enforcing the order, holding that "[i]n the absence of an evidentiary hearing and particularized findings, the restrictions imposed by the Respondent are contrary to law."  In light of this court's ruling, Respondent vacated her original order.  This court then dismissed the petitions as moot.

{¶3}   Pursuant to the mandate from this court, Respondent conducted a hearing on the matter on June 1, 2017.  During the hearing, Respondent heard testimony from three individuals.  The first individual had been the courtroom bailiff during the first Tensing trial.  He testified to the contents of an affidavit he had

4

prepared in which he averred that some of the jurors during the first trial had expressed discomfort at being publically identified as jurors. A deputy testified that she had observed, on courthouse surveillance video, two individuals who appeared to be photographing individuals outside the main entrance of the courthouse on the first day of jury selection. Another deputy testified about the security measures taken during the first Tensing trial, including the restrictions put in place for the use of electronic devices in the area around the courtroom. Respondent also reviewed the completed juror questionnaires. Of the 180 completed forms, the court found that 38 individuals had said that they would not be willing to serve if their identities became known publically, and 39 individuals said they would be "concerned about their personal safety, reputation or standing in their community among family, friends and associates" should they be asked to serve on the jury.

{¶4} Respondent also took judicial notice of other matters. For example, she took judicial notice of the fact that she had presided over another criminal trial in which an associate of that defendant had used social media to try and locate jurors. She also took judicial notice of two separate instances involving cellular devices in pretrial hearings: one in which a prospective juror's phone rang during a proceeding because he or she had forgotten to silence it, and another in which a spectator had dropped a phone during a hearing while testimony was being taken, "causing a distraction." She also took "judicial notice" that "certain interactions between police officers and African American citizens wherein deadly force was used or death otherwise resulted have found their way into criminal courtrooms and some judicial outcomes have led to massive public outcry and even serious violence against persons," but she determined that she "need not list or detail [the] incidents seen in America over the last few years."

5

{¶5} As a result of the hearings, and the other information of which she had taken judicial notice, Respondent issued two separate decisions on court and information access. First, she signed an entry in which she denied the request for release of the questionnaires completed by the serving and prospective jurors until after the trial had concluded. Upon the conclusion of the trial, Respondent indicated that the questionnaires would be released, with personally-identifying information redacted.

{¶6} Respondent later issued a separate decision in which she severely restricted media access to the proceedings. The restrictions included limiting access to the courtroom to four randomly selected members of the media—regardless of the amount of seating that would otherwise be available to the general public; forbidding the use of electronic devices in the courtroom by anyone other than attorneys or court personnel; forbidding the use of electronic devices on the fifth floor of the courthouse (the floor on which the trial was proceeding) except by attorneys, court personnel, or media representatives in a specifically-designated media room; forbidding photographing or video recording of jurors or prospective jurors; and limiting media to using a single, shared camera with a video and audio feed that would be available for the use of all, would be broadcast to the media room and would be available for livestreaming on the internet or recording for later use.

{¶7} Relators filed complaints with this court, petitioning the court for writs of prohibition and mandamus. Relators seek a writ of mandamus to compel Respondent to release the unredacted jury questionnaires. They seek a writ of prohibition prohibiting her from enforcing the restrictions put in place on the media's access to the trial proceedings. After the initial pleadings were submitted,

Relators filed a motion for summary judgment, claiming they are entitled to relief as a matter of law.

## The Writ of Mandamus

{¶8} To be entitled to a writ of mandamus, a relator must establish (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 14. These requirements must be proved by clear and convincing evidence. *Id.* "Mandamus is the appropriate vehicle to compel disclosure of specific records requested under the Ohio Public Records Act and the Ohio and United States Constitutions." *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 50, citing *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas*, 77 Ohio St.3d 40, 45, 671 N.E.2d 5 (1996).

{¶9} The right to access completed juror questionnaires arises from the Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, together with the analogous provision of Article I, Section 11 of the Ohio Constitution and the "open courts" provision of Article I, Section 16 of the Ohio Constitution. *See Bond* at ¶ 19. The public has a presumptive right to access during voir dire proceedings. *Bond* at ¶ 18, citing *Press-Ent. Co. v. Superior Court of California for Riverside Cty.*, 464 U.S. 501, 508-510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). This same presumption of access applies to the answers given to written questions, because "[t]he fact that the questioning of jurors was largely done in written form rather than orally is of no constitutional import." *Bond* at ¶ 19, quoting

7

*Copley Press, Inc. v. Superior Court*, 228 Cal.App.3d 77, 89, 278 Cal.Rptr. 443 (1991). As the *Bond* court noted:

> the purpose behind juror questionnaires is merely to expedite the examination of prospective jurors, it follows that such questionnaires are part of the voir dire process. The fact that a lawyer elicits juror responses from written questions rather than oral questions has no bearing on whether the responses are considered in accepting or rejecting a juror.

*Bond* at ¶ 18.

{¶10} But the right of access to the voir dire proceedings is not absolute. The First Amendment right creating a presumption of openness may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Bond* at ¶ 17, quoting *Press-Ent.*, 464 U.S. at 508, 104 S.Ct. 819, 78 L.Ed.2d 629. Additionally, identifying information such as Social Security numbers, telephone numbers, and driver's license numbers should be redacted because they are not properly part of the voir dire process. *Bond* at ¶ 25.

{¶11} At its core, the problem in this case is that Respondent failed to conduct an inquiry on the issue in accordance with the procedure outlined in *Bond*. The court instructed trial judges to "inform prospective jurors of their right to request an in-camera hearing, on the record and with counsel present, regarding any written question during the voir dire process." *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, at ¶ 22, citing *Press-Ent.*, 464 U.S. at 513, 104 S.Ct. 819, 78 L.Ed.2d 629. If an individual juror has a concern about the disclosure of information on the form, the trial judge should then "make a determination on the record as to

whether a prospective juror has a legitimate privacy interest to warrant the nondisclosure of a response." *Id.* This individual questioning could begin with the 12 jurors selected as the prospective jury before the parties commence their challenges, and could be guided by the jurors' responses in the questionnaires. The *Bond* court concluded that "[i]f the trial judge finds a valid basis for nondisclosure, the judge should notify the prospective juror of his or her right to refrain from answering the question on the questionnaire form and should seal the hearing transcript."

{¶12}    Respondent did not inquire of the individual jurors about their ability or willingness to serve if the questionnaire information was released to the public. She did not even voir dire those who indicated that it would. Had this occurred, the trial court would have had several options available, including, but not limited to, redacting information on individual questionnaires, redacting certain information on all questionnaires, withholding disclosure of the questionnaires until the conclusion of the trial, and excusing for cause jurors who were so sensitive to their service becoming known that they could not serve effectively. The *Bond* court recognized that each case would provide its own challenges, stating that "we defer to trial courts to establish the manner in which prospective jurors may request an in-camera hearing when completing juror questionnaires." *Bond* at ¶ 24. But some form of individual engagement with the jurors must occur to create a record sufficient to justify withholding information from the public.

{¶13}    And the failure to engage in this inquiry has significantly limited the value of the evidence that is present in the record. For example, Respondent noted that there were 38 responses indicating an unwillingness to serve if identities became known publically, and 39 responses indicating concern about "personal safety,

reputation or standing in their community among family, friends and associates." 22 of the respondents answered "yes" to both questions. But we have no information from the individual jurors to flesh out the bases for their concerns. And while Respondent made several observations about what had occurred in the previous litigation of the Tensing charges, in other cases over which she had presided, and in other cases involving the use of deadly force by law enforcement across the nation, the lack of a voir dire significantly limited evidence connecting this information to these jurors and this case.

{¶14} On this record, Respondent made insufficient findings to support her decision to withhold the completed juror questionnaires in their entirety from public disclosure. In fact, the findings she made only addressed the nondisclosure of identifying information, including the names and addresses of the jurors. Therefore, Relators have clearly met their burden to demonstrate that they are entitled to the release of information other than identifying information.

{¶15} The issue that remains for us to decide is whether juror-identifying information must also be disclosed. First, we note that the *Bond* court specifically held that Social Security numbers, driver's license numbers, and telephone numbers should be redacted. But the court considered the issue of disclosing names and addresses separately. *See Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, at ¶ 34-47. The court concluded that "the First Amendment *qualified right* to access extends to juror names and addresses." (Emphasis added.) *Id.* Such a qualified right creates a "presumption of openness" requiring disclosure—a presumption that can only be overcome with a demonstration of "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve

10

that interest." *Bond* at 159, quoting *Press-Ent.*, 464 U.S. at 510, 104 S.Ct. 819, 78 L.Ed.2d 629.

{¶16} In *Bond*, the court concluded that the names and addresses should have been disclosed. But the court made that determination because "the trial court failed to articulate particularized findings [necessitating] the total suppression of juror names and addresses." *Bond* at 159. In this case, we conclude that Relators demonstrated that they had a qualified right to access the information that created a presumption of openness, but Respondent's findings were sufficient to overcome that presumption. The trial court made findings that support the conclusion that there may be a risk to the jurors in the case that exceeds the risk borne generally by jurors who serve in criminal trials, and those findings were sufficient to rebut the presumption of openness as to the jurors' names and addresses.

{¶17} Along with names and addresses, and for the same reason, we further conclude that the redaction of the identity of a juror's current employer is appropriate in cases where the juror is self-employed or works for a company or organization that is so small that the release of the name of the employer would be tantamount to identifying the juror.

{¶18} Concededly this is a close case. It was perhaps made needlessly close by the fact that Respondent failed to conduct a proper and complete *Bond* hearing in accordance with our prior order. But we conclude that the findings made by the trial court were sufficient, if only barely. Respondent should have released the redacted questionnaires immediately after conducting the hearing on the issue and before the trial commenced. For these reasons, we issue a limited writ of mandamus compelling Respondent to release the completed questionnaires after first redacting personal identifying information such as names, addresses, Social Security numbers,

11

telephone numbers, driver's license numbers, and current employers if listing the employer would be tantamount to identifying the individual juror.

## Writ of Prohibition

{¶19} Relators also seek a writ of prohibition to compel the trial court to rescind its restrictions on courtroom access. A writ of prohibition is a preventive measure that "is designed to prevent a tribunal from proceeding in a matter which it is not authorized to hear and determine." *State ex rel. Stefanick v. Marietta Mun. Court*, 21 Ohio St.2d 102, 104, 255 N.E.2d 634 (1970); *see State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 73, 701 N.E.2d 1002 (1998). To prevail in this case, Relators must establish that (1) the trial court is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy at law exists. *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, ¶ 9; *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 336, 686 N.E.2d 267 (1997).

{¶20} We conclude that the petition is moot. The trial has concluded, the indictments have been dismissed, and the applicable restrictions are no longer in place. The dissent would have this court address this issue by invoking the seldom-used authority to decide questions that are "capable of repetition, yet evading review." While the question involves conduct that is too short in duration to be fully litigated prior to its cessation, we do not have a reasonable expectation that the same complaining party will be subjected to the same action again. *See State ex rel. Cincinnati Enquirer v. Ronan*, 124 Ohio St.3d 17, 2009-Ohio-5947, 918 N.E.2d 515, ¶ 5, citing *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231, 729 N.E.2d 1182 (2000). The case over which Respondent presided was singular in terms of its subject matter and media attention. The possibility of a case of this

nature and magnitude is far too unlikely to recur for this court to pursue this extraordinary exercise of jurisdiction.

### Conclusion

{¶21}   We issue a limited writ of mandamus to compel the trial court to release the completed juror questionnaires of all 180 potential jurors after redacting identifying information such as names, addresses, Social Security numbers, telephone numbers, driver's license numbers, and places of employment where appropriate.  We dismiss the petition for the writ of prohibition as moot.

Judgment accordingly.

DETERS, J., concurs.
ZAYAS, J., concurs in part and dissents in part.


ZAYAS, J., concurring in part and dissenting in part.

{¶22}   I concur with the majority's holding regarding the petition for a writ of mandamus.  However, I respectfully dissent from the majority's conclusion that the petition for a writ of prohibition is moot.  While the cause is technically moot, there is a recognized exception to the mootness doctrine for cases that are "capable of repetition, yet evading review," and it is within our authority to raise the applicability of this exception sua sponte.  *See State ex rel. Cincinnati Enquirer v. Bronson*, 191 Ohio App.3d 160, 2010-Ohio-5315, 945 N.E.2d 551, ¶ 8 (12th Dist.).  To meet this exception, the following conditions must apply: "(1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is 'a reasonable expectation that the same complaining party will be subjected to the same action again.' "  *Paige v. Ohio High School Athletic Assn.*, 2013-Ohio-

13

4713, 999 N.E.2d 1211, ¶ 17 (1st Dist.), quoting *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231, 729 N.E.2d 1182 (2000).

{¶23} The first element is met here because a criminal trial's duration is almost always much shorter than this court's typical period of review. *See Press-Ent. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 6, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("It can reasonably be assumed that * * *, because criminal proceedings are typically of short duration, such an order will likely evade review."); *State ex rel. Dispatch Printing Co. v. Louden*, 91 Ohio St.3d 61, 64, 741 N.E.2d 517 (2001) ("[A] closure order usually expires before an appellate court can consider it[.]"); *State ex rel. Dispatch Printing v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, ¶ 11 (noting that an order prohibiting a newspaper from taking photographs of a juvenile's face during a plea hearing was, "[l]ike more typical orders[,] * * * too brief in its duration to be fully litigated before the plea hearing concluded."); *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 30 (noting that the "short duration of * * * criminal proceedings"—less than two months between the suspect's arrest and guilty plea—"truncated the Enquirer's ability to fully litigate its mandamus claim before us").

{¶24} In the case at hand, it was a mere three weeks between the beginning of voir dire and the trial's end.

{¶25} The second element is met because essentially every media company in Cincinnati is a petitioner in this case, and there is a "reasonable expectation" that a trial court will issue a substantially similar order restricting the activities of these media companies in a future high-profile criminal trial. *See Bronson* at ¶ 3-4, 7-8 (holding that there was "a reasonable expectation that the same complaining party

will be subject to the same action again" where the judge had restricted a newspaper's access to the jury view of the crime scene in a high-profile murder trial); *Ohio Dept. of Public Safety* at ¶ 31 (holding that case was not moot because, "[w]ithout resolution of the questions at issue here, we can reasonably expect the Enquirer and other media outlets to continue to request dash-cam recordings and law-enforcement agencies to continue to withhold them."); *Press-Ent.,* 478 U.S. at 6, 106 S.Ct. 2735, 92 L.Ed.2d 1 (holding that case was not moot because "[i]t can reasonably be assumed that petitioner will be subjected to a similar closure order.").

{¶26} For example, part of the relief sought in WCPO's petition was a writ prohibiting respondent from "forbidding WCPO from broadcasting, televising, photographing, or recording jurors or prospective jurors." Since the "filming, video-taping, recording or taking photographs of jurors" is prohibited "in any circumstance" by Hamilton County Court of Common Pleas Rule 30(F), there is, at the very least, a "reasonable expectation" that WCPO would again be prohibited from "broadcasting, televising, photographing, or recording jurors." *See, e.g., Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, at ¶ 12 (finding a "reasonable expectation that the judge will subject the Dispatch to comparable orders in the future" where the judge "maintain[ed] that his order 'was specifically authorized' by Sup.R. 12.").

{¶27} Therefore, the exception to the mootness doctrine should be applied here, and this court should proceed to rule on the merits of the petition for a writ of prohibition because the issues are "capable of repetition, yet evading revew."

Please note:
    The court has recorded its own entry on the date of the release of this opinion.

15